IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BJE, LLC v. Burkett

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BJE, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLEE,

V.

VIOLA BURKETT, APPELLANT.

Filed January 13, 2026.    No. A-25-278.

Appeal from the District Court for Adams County: TIMOTHY E. HOEFT, Judge. Affirmed.

Andrew J. Hilger for appellant.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

Viola Burkett appeals from the order of the district court for Adams County affirming the order of the county court. For the reasons outlined below, we find the district court did not err in affirming the county court's order, and we affirm the judgment of the district court.

## BACKGROUND

Burkett owned residential property, a duplex, in Hastings, Nebraska, that she listed for sale. In April and late May 2022, a representative of BJE, LLC, viewed the property as a potential purchaser. At those times, the roof had no damage.

Burkett, who lived in the duplex, completed a disclosure form on June 2, 2022, and indicated there was no roof damage. BJE received a copy of that disclosure on June 13 and entered into an agreement to purchase the property that same day. Closing was scheduled for August 1. The purchase agreement contained the following provisions relevant to this appeal.

- 1 -

**11. Condition of Property.** This Agreement is based upon Buyer's personal inspection or investigation of Property and not upon any representation or warranties of condition by Seller or any Agent involved in this transaction. If finished square footage, location of property lines, age, school district, lot size, condition of improvements or any other factor is important to Buyer's decision to purchase, Buyer acknowledges he has been advised to make independent investigation. Buyer agrees to accept Property in its present condition, except as provided in this Agreement.

**12. Inspections.** (check one)

**X Buyer Waives All Inspections:** Buyer accepts the property "AS IS". However, Buyer does not waive, release or relinquish any right or claim Buyer may have by reason of any misrepresentation or fraudulent concealment by Seller. . . .

**18. Responsibility of Insurance and Risk of Loss.** Seller shall insure the property for fire, wind, hail, explosion, water or any other cause at no less than purchase price until closing. Risk of loss or damage to Property, prior to closing, shall be the responsibility of Seller. If prior to closing the structure on the Property is materially damaged, Seller shall immediately notify the Buyer in writing of the damage. Buyer, at Buyer's choice, may: 1) Rescind this Agreement OR 2) Take the property subject to the damage with the Seller paying to the Buyer the insurance proceeds and deductible for the restoration of the property or at a price discounted by the cost of restoration of the premises.

After closing, BJE discovered that the roofs on the duplex and its garage had damage consistent with impact from a foreign object. Storms occurred in the area on June 7 and June 14, 2022, that included hail of sufficient size to cause damage to the roofs. Burkett claimed she was not aware of any damage to the roofs from the time she signed the disclosure statement on June 2 through closing on August 1. Sometime in August or early September, Burkett submitted a claim to her insurance company for damage to the roofs, and received $6,000. Her deductible was $6,040. She did not pay any of this money to BJE.

BJE filed a complaint against Burkett in the county court alleging five causes of action. The first four causes of action involved allegations that Burkett had known about the damage prior to signing either the June 2, 2022, disclosure statement or the June 13 purchase agreement. The fifth cause of action alleged a breach of contract. Specifically, BJE alleged that pursuant to the purchase agreement, Burkett had a duty to maintain the property in the same condition it existed at the time the purchase agreement was signed. BJE alleged that "[d]amage to the roofs following the execution of the Purchase Agreement but prior to closing is the expense of [Burkett] and [Burkett] has breached the Purchase Agreement by failing to remedy this damage." BJE alleged the roofs showed no evidence of leaking prior to entering into the purchase agreement but that after closing there was evidence of significant damage to the roofs, resulting in water intrusion. It further alleged that the damage was of recent origin and appeared to be the result of wind and hail.

After trial, the county court found that Burkett had breached the purchase agreement. It noted that Burkett was seeking to escape liability from damage that occurred after she completed her disclosure statement on June 2, 2022, but prior to closing. Specifically, the county court stated:

> [Burkett's] argument that she had no contractual obligation to pay the insurance proceeds and deductible, seeking that the Court infer that she only became aware of the material

damages to the property after closing, is without merit. The damages to the property were incurred prior to closing, notwithstanding that said damages may have occurred after the parties had signed the purchase agreement.

The county court entered judgment in favor of BJE against Burkett for $12,040, the combined amount Burkett received in insurance proceeds and the amount of her deductible. Burkett appealed to the district court and it affirmed the order of the county court.

## ASSIGNMENTS OF ERROR

Burkett assigns, combined and restated, that the county court erred by (1) not determining whether BJE proved the hail damage occurred after the execution of the purchase agreement, (2) concluding that the risk of loss provision in the purchase agreement applied, (3) determining Burkett breached the purchase agreement by failing to notify BJE of the damage and by not remedying the damage, and (4) concluding Burkett had a contractual obligation to pay BJE the insurance proceeds and deductible.

## STANDARD OF REVIEW

The district court and higher appellate courts generally review appeals from the county court for error appearing on the record. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, which an appellate court will not disturb on appeal unless clearly wrong. *Id*.

## ANALYSIS

*Date of Damage.*

Burkett assigns error in the county court's failure to determine whether BJE proved the hail damage occurred after the execution of the purchase agreement. We conclude that the county court implicitly found the damage to the roof occurred after the execution of the purchase agreement, and the district court did not err in affirming the county court's order.

BJE's first four causes of action involved allegations that Burkett was aware of the damage either before June 2, 2022, when she signed her disclosure statement, or June 13, when she signed the purchase agreement. The underlying premise of these causes of action is that the damage occurred sometime prior to June 13. Only the fifth cause of action alleged the damage occurred after the purchase agreement was signed. The county court specifically found that BJE failed to prove it was entitled to recovery under its first four claims, but found it was entitled to recover under its breach of contract claim. Implicit in this decision is a finding that the damage occurred after June 13.

The evidence at trial was that storms on June 7, 2022, and June 14 produced hail capable of causing damage to the roof. Although not explicitly stating the damage to the roof was a result of the June 14 storm, by limiting recovery to the allegation of a violation of the purchase agreement and excluding recovery for allegations related to the disclosure statement, the county court

implicitly found that the damage occurred after the purchase agreement was executed. The county court could not have found a breach of the purchase agreement prior to it being in effect.

The moment of acceptance is the moment the contract is created. 17A Am. Jur. 2d *Contracts* § 65 at 93-94 (2016). "In the case of a written contract, the time when it is finally signed or executed, or the time of its delivery, is ordinarily deemed to be the time when the contract becomes effective or binding, unless a different intent appears." 17A C.J.S. *Contracts* § 497 at 429 (2020). The purchase agreement between Burkett and BJE was not signed and in effect until June 13, 2022; therefore, it could not have been breached prior to that date. By finding Burkett breached the purchase agreement, the county court was implicitly finding the June 14 storm caused the damage at issue.

This finding is supported by the evidence. The roof was not damaged when representatives from BJE viewed the property in April and May 2022. On June 2, Burkett signed the disclosure form that stated there was no roof damage. The storms of June 7 and June 14 both produced hail capable of causing damage to the roof. Burkett's boyfriend inspected the roof following the June 7 storm by going up in a "bucket truck" to look at the roof, and did not see damage, nor did the employee of a tree service who removed a limb from the garage at that time. Although Burkett's boyfriend also testified that after the June 14 hailstorm he did not see damage, he made this determination by looking at the roof from the driveway. Following closing, the roofs showed damage that was consistent with being struck with a foreign object like hail. There was competent evidence from which the county court could conclude the June 14 storm caused the damage.

The county court specifically found that BJE failed to prove it was entitled to recover on its claims that Burkett had knowledge of the damage prior to either June 2, 2022, or June 13; rather, it found BJE had proved Burkett violated the purchase agreement, which took effect June 13. Implicit in these rulings is a finding that the June 14 storm caused the damage to the roofs. We conclude that the county court determined BJE proved the hail damage occurred after the execution of the purchase agreement, and this finding was not clearly erroneous. Burkett's first assigned error fails.

*Risk of Loss Provision.*

Burkett assigns error to the county court's concluding the risk of loss provision in the purchase agreement applied. We find no error.

The risk of loss provision in the purchase agreement provides:

> **18. Responsibility of Insurance and Risk of Loss.** Seller shall insure the property for fire, wind, hail, explosion, water or any other cause at no less than purchase price until closing. Risk of loss or damage to Property, prior to closing, shall be the responsibility of Seller. If prior to closing the structure on the Property is materially damaged, Seller shall immediately notify the Buyer in writing of the damage. Buyer, at Buyer's choice, may: 1) Rescind this Agreement OR 2) Take the property subject to the damage with the Seller paying to the Buyer the insurance proceeds and deductible for the restoration of the property or at a price discounted by the cost of restoration of the premises.

Pursuant to this provision, Burkett agreed to bear the risk of loss for any hail damage occurring after June 13, 2022, when the purchase agreement was signed, but prior to closing on August 1.

The county court implicitly found the June 14 storm caused the damage. As the hail damage occurred after the execution of the purchase agreement, but prior to closing, it fell under the risk of loss provision in the purchase agreement. We find no error on the record in the county court's finding in this regard.

*Compliance With Purchase Agreement.*

Burkett assigns error to the county court's determination that she breached the purchase agreement by failing to notify BJE of the damage and by not remedying the damage. We find no error.

Burkett argues that the dismissal of BJE's other four claims "suggests that the court found that [BJE] failed to prove that Burkett was aware of any roof damage before closing on the sale." Brief for appellant at 15. She reasons that if she did not have knowledge of any damage, she had no contractual duty to notify and/or remedy the damage. *Id*. at 16. We disagree with Burkett's logic because the other causes of action involved nondisclosure prior to execution of the purchase agreement. Furthermore, the county court rejected this same argument, stating

> [Burkett's] argument that she had no contractual obligation to pay the insurance proceeds and deductible, seeking that the Court infer that she only became aware of the material damages to the property after closing, is without merit. The damages to the property were incurred prior to closing, notwithstanding that said damages may have occurred after the parties had signed the purchase agreement. [Burkett's] choosing to wait until after closing before submitting her insurance claim does not absolve her from responsibility to comply with the terms of paragraph 18. of the purchase agreement executed by the parties on June 13, 2022.

We do not read the county court's order to suggest Burkett did not become aware of the damage until after closing; rather, it highlights Burkett's duty to notify even after the purchase agreement was signed. The county court's phrasing of Burkett "choosing to wait until after closing" is further indicia that Burkett's inference of ignorance is misplaced and was, in fact, rejected by the county court. This is buttressed by the county court's finding that "[n]either [Burkett] nor [her boyfriend] believed that there was hail damage to the roof of the property, or at least they testified as such."

The terms of the risk of loss provision obligated Burkett to immediately notify BJE of the damage; she failed to do so. And although Burkett assigns error to the court's finding of a breach of the agreement based upon a duty to remedy because the agreement contained no such obligation, its use of the term "remedy" is related to the buyer's option of rescinding the agreement or receiving insurance proceeds, which we discuss below.

We find no error appearing on the record to these assigned errors.

*Insurance Proceeds and Deductible.*

Burkett assigns error in the county court's concluding Burkett had a contractual obligation to pay BJE the insurance proceeds and deductible. We find no error.

The risk of loss provision provided that BJE could choose to "1) Rescind this Agreement OR 2) Take the property subject to the damage with the Seller paying to the Buyer the insurance

proceeds and deductible for the restoration of the property or at a price discounted by the cost of restoration of the premises." BJE did not seek to rescind the agreement, and at the time it became aware of the damage, it had taken possession of the property, and had paid full price. The county court determined BJE's estimates for repair or replacement were unreliable, leaving the remaining remedy of payment of insurance proceeds and Burkett's deductible. The county court entered judgment against Burkett for $12,040, the amount of the insurance proceeds and deductible. This was the remedy provided by the purchase agreement and was not error.

## CONCLUSION

The county court's order implicitly found the June 14, 2022, storm damaged the roofs and we determine this finding was not clearly erroneous. It further determined the risk of loss provision in the purchase agreement applied, Burkett breached the purchase agreement when she failed to notify BJE of the damage, and the purchase agreement obligated Burkett to pay BJE the insurance proceeds and deductible. We find no error appearing on the record as to these determinations and affirm the judgment of the district court affirming the county court's order.

AFFIRMED.